UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JAMES A. BILSKI, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 16-322-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MARK ESPER, Secretary, Department of the Army,[1] | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Secretary of the Army's ("the Secretary") partial motion to dismiss and motion for summary judgment. For the reasons outlined below, the partial motion to dismiss will be denied. However, the defendant's motion for summary judgment will be granted in part, and denied, in part.

**I.**

The Court's Memorandum Opinion and Order entered on August 14, 2017, outlines the relevant facts. Therefore, the Court will not repeat all of the particulars here. In summary, this case arises out of events at the Blue Grass Army Depot ("BGAD") in Richmond, Kentucky. [Record No. 35, p. 2] Plaintiffs James Bilski and Charles Herald were employed as Electronics Mechanics in the Intrusion Detection System ("IDS") Maintenance Section, Directorate of Emergency Services, at BGAD. [Record No. 1 ¶ 16] As part of the IDS

---

[1] Mark Esper was sworn into office as Secretary of the Army on November 20, 2017. He is substituted as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Maintenance Section, the plaintiffs were responsible for the installation, maintenance, modification, and repair of the IDS Equipment for Category I and II ammunitions and explosive storage facilities, also known as igloos. [Record No. 35, p. 3] The plaintiffs were required to possess security clearances and be qualified under the Army's Arms, Ammunition & Explosives ("AA&E") Program as a condition of their employment. [*Id*.] Accordingly, individuals under consideration for taking part in the AA&E program are required to undergo a rigorous security screening designed to provide the commander reasonable assurances that personnel with character traits that raise significant doubt regarding their honest and stability are not afforded access. [*See* Record No. 35-3.] Grounds for removal from the AA&E program include any "character trait, a record of conduct, or adverse information, which, in the commander's/director's/manager's judgment, would be prejudicial to reliability or trustworthiness." [*Id*. at subsection d]

Bilski applied for a promotion to the position of Electronic Security Assessment Officer. If promoted to this position, he would oversee the Electronic Mechanics and have supervisory responsibilities regarding maintenance of the IDS in Early 2014. [Record No. 35, p. 4] Bilski interviewed for the position but was not selected. [Record No. 1, ¶ 20-22] He was over 40 years of age at the time. [*Id*. at ¶ 25] The individual selected (Chris Willoughby) was under 40 years of age. [*Id*. at ¶ 24] Thereafter, Herald allegedly overheard a conversation between BGAD Police Chief Richard Bobo and Donald McKeehan. [*Id*. at ¶ 28] Bilski filed a formal complaint of discrimination after learning of this conversation from Herald. [*Id*. at ¶ 29]

In April 2015, the Joint Munitions Command ("JMC"), which oversees BGAD, conducted a periodic inspection and found that IDS inspection/testing (for which the plaintiffs

were responsible) was not being conducted properly. [Record No. 35, p. 7] Bilski and Herald were temporarily detailed to non-AA&E Public Works positions until an AR-190-11, Chapter 2, inquiry into their reliability and trustworthiness could be completed. [*Id*.] The plaintiffs were formally removed from the AA&E program after the inquiry was completed. [*Id*.] A few days later, the plaintiffs were notified that the Director of Emergency Services had proposed their outright removed from federal service for failing to meet a condition of employment, failing to observe written regulations and procedures, and for delay in carrying out instructions. [Record Nos. 1, ¶ 42; 35-17; 35-18] Shortly thereafter, Deputy Commander Sharp issued a decision on their removal in which he sustained all charged in the proposed removal. [Record Nos. 35-19; 35-20] However, Sharp determined that, based on prior performance and absence of prior discipline, the plaintiffs had the potential for rehabilitation in positions not involved with AA&E, and mitigated their proposed removal to a 10-day suspension, followed by reassignment to duties not involving access to AA&E. [*Id*.]

A private contracting company discovered tampering with the alarms in several igloos and a building a month later. [Record No. 35-21] Specifically, it was discovered that someone had intentionally wired resistors to stop communication between the igloos and the security desk, and a "defeat key" caused the secure/access switch to remain secure at all times. [*Id*. at 5] The Federal Bureau of Investigation and the Army's Fort Knox Criminal Investigation Division ("CID") were notified and CID opened an investigation in late October 2015. [*Id*.] The report found probable cause existed to believe the plaintiffs committed the offense of Wrongful Damage to Government Property when they failed to conduct maintenance of critical storage facilities and bypassed the alarms using "defeat keys." [*Id*.]

The plaintiffs' access to BGAD was revoked on November 24, 2015 by BGAD Commander Colonel Hudson. Hudson based this decision on his judgment that their actions posed a bona fide risk to Government property and interests. [Record Nos. 35-22; 35-23] Deputy Commander Sharp proposed their indefinite suspension from federal service that same day. [Record Nos. 35-24; 35-25] BGAD Commander Hudson indefinitely suspended the plaintiffs from federal service on January 14, 2016. [Record Nos. 35-26; 35-27]

The United States Attorney's Office for the Eastern District of Kentucky notified the plaintiffs on August 22, 2016, that they would not be pursuing criminal charges because the government "[did] not believe there [was] sufficient evidence to prove criminal conduct beyond a reasonable doubt." [Record No. 35-28] The letter noted, however, that the evidence indicated that the plaintiffs "likely failed to follow governing regulations, procedures, and/or protocols in discharging their duties, and that their conduct likely undermined the integrity of the security system protecting the Blue Grass Army Depot's munitions and other inventory." [*Id.*]

The plaintiffs promptly filed suit following receipt of the U.S. Attorney's letter. [Record No. 1] The Verified Complaint names as defendants the Secretary of the Army, BGAD Commander Lee G. Hudson, Deputy Commander Stephen L. Sharp, and BGAD employees Christopher L. Willoughby and Donald McKeehan. [*Id.*] Count I alleges age discrimination against Plaintiff Bilski under the Age Discrimination Employment in Act of 1967. [*Id.* at ¶¶ 8 and 56] Count II asserts claims of unlawful retaliation against both plaintiffs based upon their ten-day suspension without pay, alleged abuse of the criminal justice system, and the plaintiffs' indefinite suspension form federal service. [*Id.* at ¶63] The defendants seek

compensatory damages, lost wages in the form of past and future earnings, injunctive relief in the form of reinstatement and promotion, and attorney's fees. [*Id.* at 14-15]

The United States Department of the Army timely filed a motion to dismiss, in part, on behalf of all defendants on November 14, 2016. [Record No. 6] The Court dismissed the plaintiffs' claims against all the individual defendants, and dismissed the plaintiffs' retaliation claims in Count II to the extent they are based on the plaintiffs' removal from the AA&E program. [Record No. 14] Additionally, the Court dismissed the plaintiffs' demand for compensatory damages and their demand for a jury trial. [*Id.*] The Secretary has now filed a partial motion to dismiss and motion for summary judgment on the remaining claims. [Record No. 35]

**II.**

The defendant's argument that the plaintiffs retaliation claims are non-justiciable under *Dep't of the Navy v. Egan*, 484 U.S. 518 (1988) contests the Court's subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. A 12(b)(1) motion "can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

Conversely, summary judgment is appropriate when there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine"

unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

A party moving for summary judgment bears the burden of demonstrating conclusively that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). Once the moving party has met his burden of production, the nonmoving party must come forward with significant probative evidence to defeat a properly supported motion for summary judgment. *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**III.**

**A. Justiciability of Count II**

The parties reargue what this Court has already decided in the previous Memorandum Opinion and Order entered on August 14, 2017. [Record No. 14] Specifically, the Court held:

> Applying *Hale* and taking into consideration authority from the other circuits, the Court will grant the defendant's Rule 12(b)(1) motion, in part. Specifically, the Court finds that the Army's decision to remove the plaintiffs from the AA&E program, *which includes access to both classified and sensitive national-security information*, must be reserved to the Executive Branch. However, the Court denies the Rule 12(b)(1) motion with respect to the plaintiffs' suspensions without pay and removal from federal service.

*Id.* at p. 12. The Secretary now seeks to expand the Court's justiciability ruling to cover all of the decisions made by the command staff at BGAD. [*See* Record No. 35, pp. 18-27] And the plaintiffs appear to argue that *Egan* does not apply to any of the decisions made, including the decisions the Court has already determined to be reserved to the Executive Branch. [*See* Record No. 43, pp. 2-9.]

The Secretary bases his argument that *Egan* applies to the plaintiffs' 10-day suspension by arguing that the suspensions were "premised, in large part, on the BGAD Deputy Commander's determination that the plaintiffs 'placed the security of the [AA&E] at risk along with the safety of personnel on the installation.'" [Record No. 35, pp. 23-24] He further argues that the Deputy Commander based the suspension decisions on a finding regarding the plaintiffs' reliability and trustworthiness in a position of responsibility that involved work on Intrusion Detection System Equipment for Category I and II explosive storage facilities. [*Id.* at p. 24] The Secretary contends that the Deputy Commander's assessment is "clearly a national security based determination" which involves "predictive judgment" to the future trustworthiness of the plaintiffs, rehabilitative potential, and determination which course of action is the most appropriate "to promote the efficiency of the service." [*Id.*] However, the decision to suspend the plaintiffs for 10-days does not appear to be based on a judgment on an individual's "propensity to disclose classified information," which requires predictive judgment less amenable to review by "an outside nonexpert body." *Hale v. Johnson*, 845 F.3d 224, 230 (6th Cir. 2016) (quoting *Egan*, 484 U.S. at 529). Instead, the decision to suspend the plaintiffs for 10-days appears to be punitive, based on a failure to meet conditions of employment and for violating regulations. [*See* Record Nos. 35-19; 35-20.] The "predictive judgment" that must be left to the Executive Branch appears to play more of a role in the

decision to reassign the plaintiffs to a non AA&E positions, which the Court has already decided is unreviewable under *Egan*.

The Secretary next argues that the BGAD's Commander's decision barring the plaintiffs' access to BGAD and their indefinite suspension is also unreviewable under *Egan*. But for the reasons previously stated, *Egan* does not apply to these decisions. The Court does not doubt that the decision barring access to BGAD involves some level of predictive judgment. However, *Egan* apples to predictive judgment *about the propensity to divulge sensitive or classified information*. Here, both plaintiffs were reassigned to positions that did not allow them access to the AA&E restricted areas. Further, the decision barring the plaintiffs appear to be in response to the criminal investigation and concerns regarding base security. [*See* Record Nos. 35-22; 35-23] *Egan* does not categorically reserve for the Executive Branch any and all decisions with security implications. *See Hart*, 845 F.3d at 230 (distinguishing between national-security *information* and national-security *concerns*). The same reasons equally apply to the Deputy Commander's decision to indefinitely suspend the plaintiffs. The underlying reasoning for the decisions appear to be the criminal investigation and the Commander's decision barring the plaintiffs' access to BGAD. [*See* Record Nos. 35-24; 35-25.] These decisions do not appear to be based on predictive judgment of their propensity to divulge sensitive or classified information.

**B.    Bilski's Age Discrimination Claim**

The ADEA prohibits an employer from failing or refusing to hire, discharging, or discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence.

*Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir. 2009). "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (citation and internal quotation marks omitted). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.* Regardless of the type of evidence submitted, the burden of persuasion remains on ADEA plaintiffs to demonstrate "that age was the 'but-for' cause of their employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009). "For an employer to take an adverse action 'because of age' means 'that age was the "reason" that the employer decided to act.'" *Scheick v. Tecumseh Public School*, 766 F.3d 523, 529 (6th Cir. 2014) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 350)

Bilski relies entirely on circumstantial evidence. Under the *McDonnell Douglas* burden-shifting approach, he must first establish a prima facie case of age discrimination. *See Geiger*, 579 F.3d at 622 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If Bilski succeeds in this endeavor, the burden of production shifts to the Secretary to articulate a nondiscriminatory reason for the adverse employment action. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998). If the Secretary satisfies his burden, Bilski must show that the Secretary's asserted reason is pretext. *Id.*

To satisfy the elements of a prima facie case of age discrimination based on the defendant's failure to select him for the position, Bilski must show that: (i) he was a member of a protected class; (ii) he was qualified for the position; (iii) he was considered for and denied the position; and (iv) an similarly qualified individual who was not a member of the protected

class was selected for the position. *See White v. Columbus Metro. Hous. Auth.*, 729 F.3d 232, 240 (6th Cir. 2005) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000)). Bilski's burden at the prima facie stage is "not onerous" and "poses a burden easily met." *Cline v. Catholic Dioceses of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Bilski satisfies the elements of a prima facie case of age discrimination. The defendant does not argue that Bilski has failed in his burden but turns to the second stage of the *McDonnell Douglas* burden-shifting approach and puts forth a legitimate age natural reasons for the employment decision. [*See* Record No. 35, p. 29-32.] The Secretary meets his burden of production by alleging that the selection of Willoughby over Bilski was a result of the candidates' performance in the interview process, Willoughby's experience working in a leadership position, and Willoughby's relevant course work in physical security. [*See* Record Nos. 35, p. 29; 45, p. 9; 45-1, p. 4.]

Bilski argues that, "other than McKeehan's unverified statement, there is no evidence that the so-called legitimate reason was anything other than pretextual." [Record No. 43, p. 11] He contends that had McKeehan followed BGAD regulations to use a selection panel, "there would be direct evidence that the so-called reason for the selection of Willoughby over Bilski was legitimate, not pretextual." [*Id*.] This argument does not lead to the conclusion that the Secretary failed to meet his production burden.[2] *See Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 395-96 (6th Cir. 2008) (holding that because the plaintiffs believe the proffered reason to be false does not lead to the conclusion that the defendant failed to meet its

---

[2] A selection panel was not required under the relevant hiring regulations in place at the time of the hiring decision. [*See* Record Nos. 45-1, p. 3; 45-2, p. 7]

production burden); *see also Burdine*, 450 U.S. at 254 ("the defendant need not persuade the court that it was actually motivated by the proffered reasons.").

Turning to pretext, Bilski may avoid summary judgment by producing "sufficient evidence from which the jury may reasonably reject the employer's explanation." *Allen*, 545 F.3d at 396 (quoting *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994)). "A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action 'by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenge conduct.'" *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 815 (6th Cir. 2011) (quoting *Wexler*, 317 F.3d at 576).

The Secretary contends that McKeehan based his decision to select Willoughby over Bilski on the candidates' performance in the interview process, Willoughby's experience working in a leadership position, and Willoughby's relevant course work in physical security. Bilski offers several reasons to support a finding of pretext: (i) his qualifications as compared to Willoughby; (ii) a past performance evaluation; and (iii) an alleged overheard conversation between Chief Bobo and McKeehan in which they discussed selecting a younger candidate. [*See* Record No. 43, pp. 12-16]

Bilski's contends pretext can be found by looking at the qualifications of Bilski and Willoughby. To prevail, he must show he "was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former, or (2) plaintiff was as qualified as if not better qualified than the successful applicant, and the record contains 'other probative evidence of discrimination.'" *Provenzano*, 663 F.3d at 815 (quoting *Bartlett v. Gates*, 421 F. App'x. 485, 490-91 (6th Cir. 2010)). Bilski only provides conclusory and

subjective statement that he was the better candidate. *See* Record No. 43-12 ("This position was awarded to a candidate Chris Willoughby who is 23 years my junior with less relevant education and experience."). He provides no evidence that he "was a plainly superior candidate" such that no reasonable employer would have chosen Willoughby over him. Thus, to present a triable issue of fact as to pretext for the qualification justification, Bilski is required to show that he was as qualified as, if not better qualified than, Willoughby, along with proof of "other probative evidence of discrimination." *See Provenzano*, 663 F.3d at 816.

Bilski argues that he was as qualified as Willoughby by directing attention to the resume review sheets and their close scores. [*See* Record No. 43-13.] Even though Bilski takes issue with what appears to be McKeehan crossing out Bilski's score in section 3 from an 8 to a 7, it also appears that McKeehan crossed out Willoughby' score in section 3 which resulted in a 7. [*Id.*] Either way, reviewing the qualifications of both candidates, it appears that Bilski was as qualified as Willoughby for the position. Therefore, Bilski must offer proof of "other probative evidence of discrimination." And although Bilski alleges that a past work evaluation is evidence of discrimination, this argument falls flat. Simply because he was rated as a good employee by his former boss does not show that his non-selection to the position was discriminatory.

Next, Bilski contends that the conversation Herald allegedly overheard between Chief Bobo and McKeehan is evidence of discrimination.[3] In determining whether discriminatory comments are sufficient circumstantial evidence of discrimination in a particular case, the

---

[3] The defendant does not contest that this conversation would be inadmissible hearsay. However, the statement could likely come in under Rule 801(d)(2)(D) of the Federal Rules of Evidence.

Court must consider factors such as the identity of the speaker, the nature and substance of the comments, and the temporal proximity of the comments to the challenged decision. *See Griffin v. Finkbeiner*, 689 F.3d 584, 595 (6th Cir. 2012) (citing *Ercegovich*, 154 F.3d at 354-57. Comments may qualify as evidence of discrimination if the speaker was "in a position to influence the alleged decision." *Id.* And where discriminatory statements are "made by a person in a position to influence the alleged employment decision, they will be relevant unless they are so isolated and ambiguous as to be nonprobative." *Diebel v. L&H Resources, LLC*, 492 F. App'x 523, 532-33 (6th Cir. 2012); *see also Griffin*, 689 F.3d at 596.

Here, the alleged statements overheard by Herald about choosing the younger candidate is sufficient circumstantial evidence. McKeehan was the decision maker in Bilski's non-selection. His alleged statement was not ambiguous: he expressed a desire to hire a younger candidate over a candidate who was close to retirement. It must be noted that Herald did not know the exact date this occurred or who the conversation was about. [*See* Record No. 35-7, p. 15-16 ("Well, I went to go walk in there and I heard him talking, and he was talking about, 'I'm going to hire this guy, because the other one's about to retire soon.' And I didn't know what he was talking about."; p. 17 (no names were used in the conversation, Herald did not see the resumes); p. 18 (there was nothing else at the time that indicated that the conversation was about Willoughby and Bilski); p. 19 (Herald never asked McKeehan or Bobo who they were speaking about).] It was not until over a month later Herald realized who he thought they were talking about during the conversation. [*Id.* at p. 17] But while the exact time of the statement is not evident from the record, the alleged conversation was said to have occurred during the relevant hiring time frame. Viewing the facts in a light most favorable to Bilski, the close nature of the timing of the conversation to his non-selection further supports the

relevancy of the statements. A reasonable trier of fact could infer from the candidates

qualifications, the nature of the conversation, Mckeehan's position related to the hiring

decision, and timing of the conversation, that age was a but-for cause for Bilski's non-

selection.

### C. Bilski's and Herald's Retaliation Claims

The only surviving retaliation claims relate to the plaintiffs' 10-day suspension, barring

the plaintiffs from BGAD, and their indefinite suspension.[4] The plaintiff's claims are

evaluated under the *McDonnell Douglas* burden-shifting approach because they do not present

any direct evidence of retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Further, they bear the initial burden under this approach of presenting a *prima facie* case of

retaliation. *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (2013) (citing

*DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004)). To present a *prima facie* case, the

plaintiffs must establish: (i) they were engaged in a protected activity; (ii) the defendant knew

of this protected activity; (iii) the defendant took an adverse action against the plaintiffs; and

(iv) there was a causal connection between the protected activity and the adverse action. *Id.*

(citing *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001)). "The burden of establishing

a *prima facie* case in a retaliation action is not onerous, but one easily met." *Id.* (citing *Nguyen*

*v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).

---

[4] The Secretary contends that the plaintiffs' 10-day suspension and final removal from federal
service is not before this court. [*See* Record No. 35, p., 7.] The plaintiffs' have properly pled
a claim for retaliation for the 10-day suspension. [*See* Record No. 1, ¶¶ 62-63.] Regarding
the removal from federal service, this event took place after the Complaint was filed and the
plaintiffs have not alleged nor argued throughout this action that this was retaliation. [*See*
Record Nos. 1; 7; 43.]

If the plaintiffs successfully present a *prima facie* case of retaliation, the burden shifts to the defendant to show by a preponderance of the evidence that there was a legitimate, nondiscriminatory reason for the adverse action. *DiCarlo*, 358 F.3d at 414-15; *see also Nixon v. Greenup Cnty. Sch. Dist.*, 890 F. Supp. 2d 753, 759-60 (E.D. Ky. 2012). And if they make such a showing, the burden then shifts back to the plaintiffs to establish that the defendant's proffered reason for the adverse action was a pretext. *DiCarlo*, 358 F.3d at 414-15.

The parties do not dispute that the plaintiffs have shown the first three elements of their retaliation claim. The only dispute is whether the plaintiffs have shown causation. As noted, the only surviving retaliation claims relate to the plaintiffs' 10-day suspension, barring the plaintiffs from BGAD, and their indefinite suspension. "To show causation, 'a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken' in the absence of the protected conduct. *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 381 (6th Cir. 2002) (quoting *Nguyen* 229 F.3d at 563). "Although no one consideration is dispositive, '[a] causal link may be shown through knowledge combined with closeness in time.'" *Id*. (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000)

Here, the first alleged adverse action (removing plaintiff from their work area and temporarily reassigning them) occurred over a year after the protected conduct (filing the age discrimination complaint). No temporal proximity exists between the protected conduct and the first alleged adverse action. *See Nguyen*, 229 F.3d 566-67 ("[P]revious cases that have permitted a prima facie case to be made based on proximity of time have all been short periods of time, usually less than six months." (internal quotation marks omitted)). Even if a causal

connection could be shown by the plaintiffs, their claims fail under the *McDonnell Douglas* burden-shifting approach.

The Secretary meets his burden of production by alleging that legitimate nondiscriminatory reasons exist for the plaintiffs' 10-day suspension, barring from BGAD, and indefinite suspension. For 10-day suspension, the Deputy Commander found by a preponderance of the evidence that the plaintiffs failed to meet conditions of employment, failed to observe written regulations and procedures where safety persons or property was endangered, and delayed in carrying out instructions. [*See* Record Nos. 35-19; 35-20.] Regarding the BGAD Commander barring plaintiffs' access, they were barred from entering BGAD because of a pending criminal investigation for wrongful damage to government property and a determination that they posed "a bona fide risk to Government property and interests." [*See* Record Nos. 35-22; 35-23.] Finally, the indefinite suspensions were allegedly based on the ongoing criminal investigation and the suspension of access to BGAD. [*See* Record Nos. 35-24; 35-25.] This represent legitimate nondiscriminatory reasons for the actions taken.

The plaintiffs offer no genuine issue of material fact concerning the validity of the Secretary's explanation for the actions taken. Thus, under the *McDonnell Douglas* framework, the plaintiffs have not carried the burden of demonstrating that the Secretary's nondiscriminatory explanations are pretexual. Because the temporal proximity alone is not enough to show a causal connection here, and because the plaintiffs have failed to provide sufficient evidence of retaliatory conduct, they have not met the fourth element of their prima facie case. And assuming they could meet the fourth element, the plaintiffs have failed to

demonstrate pretext for the Secretary's actions. As a result, summary judgment will be granted on the plaintiffs' retaliation claims.

## IV.

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

      1.     The defendant's partial motion to dismiss [Record No. 35] is **DENIED**.

      2.     The defendant's motion for summary judgement [Record No. 35] is **GRANTED**, in part, and **DENIED**, in part, as follows:

      a)     The plaintiffs' claims in Count II are **DISMISSED**, with prejudice.

      b)     Plaintiff Bilski's age discrimination claim in Count I remains pending.

This 25th day of June, 2018.



Signed By:

*Danny C. Reeves*

United States District Judge