UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JAMES A. BILSKI, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 16-322-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MARK ESPER, Secretary, Department of the Army, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This Court granted the defendant partial summary judgment on June 25, 2018, dismissing the plaintiffs' claim of retaliation (Count II) under the Age Discrimination in Employment Act ("ADEA"). [Record No. 46] Following a bench trial on the remaining claim (Count I), the plaintiffs moved to set aside the order dismissing the claim of retaliation. [Record No. 61] The plaintiffs' motion will be denied for the reasons discussed below.

**I.   BACKGROUND**

The Court incorporates the facts outlined in its August 14, 2017, Memorandum Opinion and Order [Record No. 14] as well as its June 25, 2018, Memorandum Opinion and Order [Record No. 46].[1]  Therefore, the Court will not repeat them in detail here.

This case arises from events occurring at the Blue Grass Army Depot ("BGAD") in Richmond, Kentucky. [Record No. 35, p. 2] Plaintiffs Bilski and Herald were employed at BGAD, and were required to possess security clearances and be qualified under the Army's

---

[1] The facts are also outlined in the Findings of Fact and Conclusions of Law filed concurrently with this order.

-1-

Arms, Ammunition & Explosives ("AA&E") Program as a condition of their employment. [Record Nos. 1 ¶ 16; 35, p. 3] Grounds for removal from the AA&E program include drug or alcohol abuse, mental instability or any other negative character trait, a record of conduct, or adverse information which, in the commander's/director's/manager's judgment, would be prejudicial to reliability or trustworthiness. The touchstone for removal is when doubt exists regarding an employee's reliability and trustworthiness. [*Id*.]

Bilski applied for a promotion to the position of Physical Security Specialist but was not selected. [Record No. 1 ¶ 20-22] Bilski was over forty years-old and the candidate who was selected was under forty years-old at the time of the decision. [*Id*. at ¶24-25] Herald claims that he overheard a conversation involving Donald McKeehan, the individual making the hiring decision, discussing how he wanted to go with the "younger guy" because the "older guy" was close to retirement. [*Id*. at ¶ 28] Bilski filed an EEO complaint of promotion non-selection with the Department of the Army and Herald filed a complaint of retaliation. [*Id*. at ¶¶ 29, 32] The Joint Munitions Command ("JMC") which oversees BGAD, conducted a routine periodic assessment to ensure the security of all sensitive categorized AA&E. [Record No. 35, p. 7] The JMC concluded that certain inspections and testing the plaintiffs were responsible for was not being conducted properly. [*Id*.]

Bilski and Herald were temporarily detailed to a non-AA&E Public Works position because of the JMC's findings until a further inquiry into their reliability and trustworthiness was completed. [*Id*.] An internal investigation determined that, based on prior performance and absence of prior discipline, the plaintiffs had the potential for rehabilitation in positions not involved with AA&E. [Record Nos. 1 ¶ 42; 35-17; 35-18] Stephen Sharp, Deputy Commander of the BGAD, met with Bilski and Herald prior to making his final decision to

mitigate their proposed removal to a ten-day suspension. [Record No. 7-1, p. 4] Sharp proposed that, if Bilski and Herald dropped their complaints, the proposed termination would be reduced to a Letter of Concern ("LOC"). [*Id*.] Sharp's testimony further indicated that he offered the settlement because it was a way to "take one more thing off his plate" and avoid the costs associated with EEO complaints. [Record No. 62, p. 50-51] Bilski and Herald did not agree to the settlement offer and were issued ten-day suspensions. [Record Nos. 35-19; 35-20]

Following the plaintiffs' removal from the AA&E program, a contractor discovered tampering with the alarms, indicating someone had installed a key that caused a secure/access switch to remain on at all times. [Record No. 35-21, p. 5] An investigation was opened by Fort Knox Criminal Investigation Division. It issued a report, indicating probable cause existed to believe the plaintiffs committed the offense of Wrongful Damage to Government Property. [Record No. 35-21] The plaintiffs access to BGAD was revoked and the BGAD Commander issued a decision finally and indefinitely suspending them from federal service. [Record Nos. 35-22; 35-23]

## II.     PROCEDURAL HISTORY

The plaintiffs filed this action on August 24, 2016. [Record No. 1] Count I alleged age discrimination against Bilski under the Age Discrimination Employment Act of 1967 ("ADEA"). [*Id*. at ¶56] Both plaintiffs asserted claims of retaliation in Count II of their Complaint. [*Id* at ¶63] The Court granted partial summary judgment, dismissing Bilski and Herald's claims of retaliation. [Record No. 46] In resolving this issue, the Court concluded that the plaintiffs: (1) did not present direct evidence of retaliation; (2) did not establish a causal connection between the protected conduct and the adverse action; and (3) "even if a causal

connection could be shown by the plaintiffs, their claims fail under the McDonnell Douglas burden-shifting approach." [Record No. 46, p. 16]

The Court held a bench trial on September 4, 2018, regarding Bilski's age discrimination claim. A ruling is being issued regarding that remaining claim concurrently with this opinion. The plaintiffs subsequently filed the present motion to set aside the judgment which dismissed the retaliation claim. [Record No. 61]

### III.   DISCUSSION

#### A. Newly Discovered Evidence

The plaintiffs assert that the Court should reconsider its previous order dismissing the plaintiff's retaliation claims based on newly discovered evidence. More specifically, they rely on the following: (1) Sharp's testimony during the bench trial which they claim establishes "a direct causal link between the filing of the EEO complaints by the plaintiffs and Sharp's offer of no disciplinary action if the plaintiffs agreed to drop their EEO complaint" and (2) actions against Jeffrey Mounts, Supervisor Department of Public Works, Maintenance Section, BGAD. [Record Nos. 61; 63]

Rule 60(b)(2) of the Federal Rules of Civil Procedure permits relief from a final judgment where there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). "[T]o prevail under Rule 60(b)(2), a party must demonstrate 'that it exercised due diligence in obtaining the information' and that 'the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment.'" *Erickson's Flooring and Supply Co., Inc. v. Basic Coatings, Inc.*, 370 Fed. App'x 632, 636

(6th Cir. 2010) (citing *Good v. Ohio Edison Co.*, 149 F.3d 413, 423 (6th Cir. 1998)). The plaintiffs cannot prevail on their motion under this standard.

### a. Sharp's Testimony

The plaintiffs claim that Sharp disclosed his "motivation for making the offer of a Letter of Concern ("LOC") in return for Bilski and Herald's dismissal of their EEO complaint." [Record No. 63, p. 1] At trial, Sharp stated:

> We had had a union president that was very difficult to get along with. We had—I can't tell you how many grievances and arbitrations that were already scheduled. Two days out of my week was set aside to hear grievances. We had several EEO complaints, and there's a cost doing all these. I had no knowledge of what their EEO complaint was. I heard it was a bogus complaint, but I don't know. But I brought it up. It would be one more thing to take off the plate, to get rid of some more of these EEO complaints, these arbitrations, these grievances.

[Record No. 62, p. 50-51] The plaintiffs contend that "[h]is testimony, which conflicted with his two prior EEOC sworn statements, provides direct evidence of his retaliatory motivation which had been lacking previously." [Record No. 63, p. 1] However, the evidence was not direct evidence of retaliation, would not have produced a different result if it had been presented to the Court before summary judgment, and the plaintiffs did not exercise due diligence.

"Direct evidence is evidence, which if believed, does not require an inference to conclude that unlawful retaliation motivated an employer's action. Instead, direct evidence 'requires the conclusion that unlawful retaliation was a motivating factor in the employer's action.'" *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010) (quoting *Abbot v. Crown Motor Co.*, 348 F.3d 537m 542 (6th Cir. 2003)). Sharp's testimony is not direct evidence of retaliation. Even if it is believed, it does not *require* the conclusion that the

defendant unlawfully retaliated against Bilski and Herald. *Id*. Instead, Sharp's testimony implies that the offer of a LOC in exchange for the plaintiffs dropping the EEO complaint was simply a way to reduce the number of complaints he had to address. There is no indication that the disciplinary action taken against Bilski and Herald was due to their EEO complaints. Thus, Sharp's testimony would not have produced a different result if it had been presented to the Court before summary judgment because it is not direct evidence of retaliation.

And because there is no direct evidence of retaliation, the plaintiffs attempt to show Sharp's testimony establishes a causal connection existed between the EEO complaints and their termination. But, "even if a causal connection could be shown by the plaintiffs, their claims fail under the *McDonnell Douglas* burden-shifting approach." [Record No. 46, p. 16] Therefore, the evidence would not have produced a different result if it had been presented earlier.

Regardless of the potential impact of Sharp's testimony, the plaintiffs did not "exercise due diligence in obtaining the information." *Id*. The plaintiffs had the opportunity to depose Sharp before summary judgment but chose to rely on their own declarations regarding the settlement offer in their response to the defendant's motion for summary judgment. [Record No. 43, p. 17] Thus, the plaintiffs are not entitled to relief under Rule 60(b)(2) for this reason. *Erickson's Flooring*, 370 Fed. App'x at 636.

**b. Actions Against Mounts**

Likewise, the alleged actions against Jeffrey Mounts do not alter the Court's analysis. The actions taken against Mounts do not constitute newly discovered evidence because the plaintiffs addressed the actions throughout their briefing to this Court. [Record Nos. 41, p. 2; 43, p. 18, n. 18] Mounts was disclosed as a witness on March 9, 2018, almost three months

prior to the plaintiffs' summary judgment briefing on June 5, 2018. [Record No. 63-1] Additionally, the plaintiffs addressed the actions against Mounts in their motion for extension of time to file a response to the motion for summary judgment on May 29, 2018. [Record No. 41, p. 2] The actions against Mounts were also discussed in the plaintiffs response to the motion for summary judgment. [Record No. 43, p. 18, n. 18]

In summary, the plaintiffs were well-aware of the actions against Mounts prior to their summary judgment briefing and addressed the actions in their response but decided to reduce the issue to a footnote. They cannot request now ask the Court consider these actions as a vehicle for relief under Rule 60(b)(2). [*Id.*]

**B. Rule 60(b)(6)**

Rule 60(b)(6) of the Federal Rules of Civil Procedure permits a court to alter a final judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). However, the rule "applies only in exceptional and extraordinary circumstances which are not addressed by the first five subsections of Rule 60(b)." *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 387 (6th Cir. 2001). "[C]ourts must apply Rule 60(b)(6) relief only in unusual and extreme situations where principles of equity mandate relief." *Blue Diamond Coal Co. v. Tr. of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (internal punctuation and citations omitted).

The plaintiffs do not explicitly address exceptional circumstances or why the principles of equity mandate relief. [Record Nos. 61, 63] Instead, they assert that the Court should consider Sharp's testimony and the actions taken against Mounts. [Record No. 63, p. 4] More specifically, they claim Mounts filed an EEO complaint and he faced disciplinary action that proposed removing him from federal service. [*Id.*] Plaintiffs do not address why this constitutes an extreme or exceptional circumstance such that relief under to Rule 60(b)(6) is

permitted or appropriate.  In short, this is not an exceptional or extraordinary circumstance where principles of equity mandate relief pursuant to Rule 60(b)(6).

IV. CONCLUSION

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that Plaintiffs' motion to set aside order and judgment [Record No. 61] is **DENIED**.

Dated: October 22, 2018.

Signed By:
*Danny C. Reeves*
United States District Judge