UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| JAMES A. BILSKI, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 5: 16-322-DCR |
| | ) |
| V. | ) |
| | ) **FINDINGS OF FACT** |
| MARK ESPER, Secretary, Department of | ) **AND** |
| the Army, | ) **CONCLUSIONS OF LAW** |
| | ) |
| Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiffs James Bilski and Charles Herald filed this action on August 24, 2016. [Record No. 1] The Court held a bench trial on September 4, 2018, to resolve: (1) the issue of liability related to Bilski's claim of age discrimination; and (2) the amount of damages, if any, to which Bilski is entitled to recover.[1]

Richard Bobo, Bluegrass Army Depot ("BGAD") Police Chief; Donald McKeehan, Antiterrorism Officer at BGAD; Charles Herald, previously an Electronics Mechanic at BGAD; Chris Willoughby, Electronic Security and Assessment Systems ("ESS") Physical Security Specialist at BGAD; Stephen Sharp, Deputy Commander of BGAD; James Vaughn, Director of Emergency Services and Security Officer at BGAD; and Plaintiff James Bilski offered testimony during trial. Having considered all of the evidence presented by the parties,

---

[1] Bilski alleged age discrimination under the Age Discrimination Employment Act of 1967 ("ADEA") in Count I. [*Id*. at ¶56] In Count II, Bilski and Herald asserted claims of retaliation in violation of the ADEA. [*Id* at ¶63] The Court granted partial summary judgment, dismissing Bilski and Herald's retaliation claims on June 25, 2018. [Record No. 46] Therefore, the only remaining claim is Bilski's age discrimination claim. [*Id*.]

-1-

the Court issues the following Findings of Fact and Conclusions of Law in accordance with Rule 52(a)(1) of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

1. The Court incorporates the facts outlined in its August 14, 2017, Memorandum Opinion and Order [Record No. 14] as well as its June 25, 2018, Memorandum Opinion and Order [Record No. 46]. Likewise, the legal conclusions contained in those opinions are incorporated here.

2. The BGAD, located in Richmond, Kentucky, supplies arms and munitions to Army installations in the southeastern United States. BGAD stores and maintains both chemical and conventional munitions, including sensitive Category I and II munitions. In accordance with its mission, BGAD operates 24 hours a day, 365 days a year, ready on short notice to supply Army forces heading into combat.

3. Plaintiff James Bilski was born in 1959. He was employed as an Electronics Mechanic at BGAD. His duties included installation, maintenance, modification, and repair of the classified Intrusion Detection System ("IDS") that protects the storage facilities ("Igloos") for the Category I and II munitions and explosives.

4. The IDS protects the munitions themselves (which sometimes contain classified components) as well as BGAD's system for communicating, storing, and discussing classified information including materials such as the emergency operating plans for theft and the recovery of chemical weapons in addition to the plans for the IDS protecting Arms, Ammunition, and Explosives ("AA&E") and chemical weapons. Details regarding the exact numbers, specific place, and manner of storing and securing AA&E, which includes the IDS, are sensitive and/or classified.

5. Employees are required to possess security clearances and be qualified under the Army's AA&E program as a condition of employment as an Electronics Mechanic. The security check for AA&E employees is repeated every three years. Grounds for removal from the AA&E program include drug or alcohol abuse, mental instability, and any other negative character trait, a record of conduct, or adverse information which in the commander's/ director's/ manager's judgment, would be prejudicial to reliability or trustworthiness. The touchstone for removal is when doubt exists regarding an employee's reliability and trustworthiness.

6. Bilski applied for a promotion to the position of Physical Security Specialist prior to March 5, 2014. A Physical Security Specialist may be responsible for installing IDS/ Electronic Security and Assessment Systems ("ESAS"), managing day-to-day operational and maintenance functions for government and contract personnel, promoting program development consistent with advancements in technology, providing funding input to supervisors, training personnel, and developing input for annual maintenance and operational budget requirements. Knowledge of the regulations governing the position is an essential part of the position of Physical Security Specialist.

7. The Civilian Personnel Advisory Center ("CPAC") approved two applicants for the position of Physical Security Specialist and provided McKeehan with Bilski's and Willoughby's resumes. The resumes indicated similar experience working as electronics mechanics for BGAD. Bilski's resume presented electronic engineering course work and experience, but it did not provide any indication of physical security specific course work. Willoughby did not list formal electronic engineering education on his resume. Instead, he presented extensive classes and certifications related to physical security.

8. McKeehan conducted individual interviews with Bilski and Willoughby after reviewing their resumes. Willoughby was confident in his knowledge of the regulations applicable to the Physical Security Specialist position while Bilski was hesitant and not as knowledgeable about the applicable regulations.

9. Willoughby was selected for the position by McKeehan without the use of a panel. McKeehan selected Willoughby because of his superior interview (specifically, his knowledge and confidence of the applicable regulations, and his coursework in physical security).

10. The position of Physical Security Specialist was a GS-09 position with potential to qualify or be further promoted to GS-11. There was no regulation in effect at the time of the hiring requiring a panel to hire GS-09 employees.

11. Bilski was over forty years-old and Willoughby was under forty years-old at the time of McKeehan's decision.

12. Herald allegedly overheard a conversation between Bobo and McKeehan, during the promotion process, discussing how they should go with the "younger guy" because the "older guy" was closer to retirement. However, Herald conceded to not liking both McKeehan and Willoughby and admitted to writing a statement on Facebook threatening to stab McKeehan in the eye with a pen. Herald further asserted that Bobo and McKeehan were talking so loudly that other people in the office near the conversation would have heard the discussion. Herald named the individuals who may have overheard the conversation, but Bilski provided no witnesses corroborating Herald's allegations. Further, Bobo and McKeehan deny that a conversation of that nature ever occurred. The Court concludes that

the testimony by Herald regarding the alleged statement of favoring the "younger guy" for the position is unreliable.

13. Bilski compiled a comparison of his resume against Willoughby's resume after he was not promoted to the position of Physical Security Specialist. The comparison purported to demonstrate that Bilski was more qualified than Willoughby but was not an accurate representation. There was no clear distinction between Bilski and Willoughby's resumes and the comparison created by Bilski does not accurately reflect the resumes' similarities. For example, both Bilski and Willoughby had extensive other schools and duties listed on their resumes. While Bilski listed his other schools and duties on the comparison, he failed to list Willoughby's extensive schools and duties. Instead, he wrote "see resume." Therefore, even though the resume comparison appears to show that Bilski had more qualifications than Willoughby, that was not the case.

14. Bilski filed an EEO complaint of promotion non-selection with the Department of the Army. Subsequently, the Joint Munitions Command ("JMC") which oversees BGAD, conducted a routine periodic assessment to ensure the security of all sensitive categorized AA&E. The JMC found the IDS inspections and testing for which Bilski was responsible were not being conducted properly on the Category I and II munitions Igloos.

15. Bilski was temporarily detailed to a non-AA&E Public Works position until a further inquiry into his reliability and trustworthiness was completed. An internal investigation into the problems with the IDS inspections and testing was conducted and it was determined that, based on his prior performance and absence of prior discipline, Bilski had the potential for rehabilitation in positions not involved with AA&E. Sharp met with Bilski prior to making his final decision to mitigate Bilski's proposed removal to a ten-day suspension. Sharp

proposed an agreement whereby if Bilski dropped his EEO complaint, the proposed termination would be reduced to a letter of concern. Sharp offered this settlement to "take one more thing off his plate" and avoid the costs associated with EEO complaints. Bilski did not agree to the settlement and was issued a ten-day suspension beginning on September 28, 2015 continuing through October 7, 2015.

16. A contractor was hired to perform IDS maintenance following Bilski's removal from the AA&E program. The contractor discovered tampering with the alarms, indicating someone had installed a key that caused the secure/access switch to remain secure at all times. An investigation was opened by Fort Knox Criminal Investigation Division ("CID"). It issued a report indicating probable cause existed to believe Bilski committed the offense of Wrongful Damage to Government Property (Willful/Negligent). Bilski's access to BGAD was revoked on November 24, 2015. The BGAD Commander issued a decision on January 14, 2016, finally and indefinitely suspending Bilski from federal service.

## CONCLUSIONS OF LAW

### A. Statement of Law

This action arises under the ADEA, as codified, 29 U.S.C. §§ 621 to 634. The ADEA prohibits employers from failing to hire or discharging or otherwise discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals age …" 29 U.S.C. §623(a)(1). "[A] plaintiff alleging a violation of §623(a) must prove by a preponderance of evidence that 'age was the but-for cause of the employer's adverse action.'" *Ramona DeBra v. JPMorgan Chase & Company*, No. 17-1411 (6th Cir. Sept. 5, 2018) (*citing Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175, 177 (2009)).

A plaintiff may offer either direct or circumstantial evidence to establish a violation of the ADEA. *Geigler v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (citation and internal quotations omitted). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id. See e.g.*, *DeBra*, No. 17-1411 (6th Cir. Sept. 5, 2018).

In the present case, the plaintiff relies on circumstantial evidence. And while *Gross* eliminated the *McDonnell Douglas* burden-shifting framework for direct evidence of age discrimination, that framework applies to circumstantial evidence. *See Geigler*, 579 F.3d at 622; *Gross*, 557 U.S. at 180; *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. at 792 (1973). Therefore, if the plaintiff establishes a prima facie case of age discrimination, the burden shifts to the defendant to articulate a nondiscriminatory reason for the adverse employment action. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998); *Burzynski v. Cohen*, 264 F.3d 611, 622 (6th Cir. 2001). If the defendant articulates a nondiscriminatory reason for the employment action, the burden shifts back to the plaintiff to show the defendant's reason is pretext. *Ercegovich*, 154 F.3d at 350; *Burzynski*, 264 F.3d at 622.

Pretext can be demonstrated "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 815 (6th Cir. 2011) (citing *Wexler*, 317 F.3d at 576); *see also Lefevers v. GAF Fiberglass Corp.*, 667

F.3d 721, 725 (6th Cir. 2012). "[A] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that the discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993).

**B. Conclusions of Law**

The plaintiff established a prima facie case for age discrimination. However, the defendant provided a nondiscriminatory reason for not promoting the plaintiff.[2] [Record No. 46, p. 10] The plaintiff argued during trial that discrimination was the real reason for the employment decision because he was the plainly superior candidate for the position, a hiring panel was required for the hiring decision, and Herald overheard an alleged conversation between McKeehan and Bobo supposedly referencing retirement age. However, to establish a reason is pretextual, the plaintiff must show both that the reason given was false *and* discrimination was the real reason for the decision. *St. Mary's*, 509 U.S. at 515.

The plaintiff failed to show that Willoughby did not have a superior interview and that he did not take coursework in physical security. Therefore, the plaintiff failed to prove that the reason given for the employment decision was pretext because he did not establish the defendant's reason was false. Even if the plaintiff had established that the reason given for the employment decision was false, he failed to show that discrimination was the real reason for the decision.

Bilski was not the plainly superior candidate for the position because his and Willoughby's resumes were similar. The Fifth Circuit has stated that, "unless the qualifications are so widely disparate that no reasonable employer would have made the same

---

[2] The reason given by the defendant was that Willoughby had a superior interview and took coursework in physical security.

decision, any differences in qualifications are generally not probative evidence of discrimination." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 923 (5th Cir. 2010). Bilski had formal electrical engineering course work but Willoughby had course work in Physical Security, which was an essential component of the job as Physical Security Specialist. Bilski and Willoughby's qualifications were not widely disparate, so the differences in qualifications is not probative evidence of discrimination. Additionally, as addressed in the findings of fact, a hiring panel was not required to make the hiring decision.

Finally, the testimony regarding the alleged conversation between Bobo and McKeehan was extremely unreliable and is not dispositive of discrimination. Therefore, the plaintiff failed to establish discrimination was the real reason for the employment decision.

## CONCLUSION

Because the plaintiff did not show the reason given for the employment decision was false and discrimination was the real reason for the decision, he did not establish the defendant's reason was a pretext. In summary, the plaintiff has not established a claim of age discrimination and is not entitled to damages.

Dated: October 22, 2018.

Signed By:
*Danny C. Reeves*
United States District Judge